## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JIMMIE A. MCADAMS AND JUDY P. MCADAMS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>    v.<br><br>EASTMAN KODAK COMPANY and JAMES V. CONTINENZA,<br><br>Defendants. | Civil Action No.: 20-cv-6861<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Jimmie A. McAdams and Judy P. McAdams ("Plaintiffs"), by their attorneys, on behalf of themselves and all others similarly situated, allege the following based upon the investigation of Plaintiffs' counsel, except as to allegations specifically pertaining to Plaintiffs, which are based on personal knowledge. The investigation of counsel included, among other things, a review of Eastman Kodak Company ("Kodak or the "Company") public filings with the U.S. Securities and Exchange Commission ("SEC"), press releases issued by the Company, media, news and analyst reports about the Company, conference calls with Company executives and investors, and other publicly available data, including, but not limited to, publicly available trading data relating to the price and trading volume of Kodak securities.

## I.    INTRODUCTION

1.    This action is a securities fraud action brought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder by the SEC, brought by Plaintiff on behalf of all persons and entities who purchased or sold the publicly traded securities of Kodak from July 27, 2020 through August 11, 2020 inclusive, and were damaged thereby.

2.    Kodak, a company known for its historic basis in photography, emerged from bankruptcy on September 3, 2013.  As of the filing of its annual report on Form 10-K on March 17, 2020, the Company purported to be a global technology company focused on print and advanced materials and chemicals, providing hardware, software, consumables and services primarily to customers in commercial print, packaging, publishing, manufacturing and entertainment.

3.    On July 27, 2020 according to *The Wall Street Journal*, Kodak released information to local reporters in Rochester, New York with no embargo time on the news advisory regarding a new manufacturing initiative that "could change the course of history for Rochester and the American people."  Several outlets reportedly published related stories and then deleted them upon Kodak's request.

4.    On July 27, 2020, Kodak's shares increased in price by nearly 25% on unusually heavy trading volume of over 1.645 million shares to close at $2.62 per share.

5.    Also, on July 27, 2020, unknown to investors, Kodak granted its Executive Chairman, James V. Continenza ("Continenza" or "Defendant Continenza"), 1.75 million stock options at a conversion price of between $3.03 and $12 per share. Additionally, the Company awarded 45,000 stock options each to its Chief Financial Officer, David Bullwinkle, Vice President Randy Vandagriff, and General Counsel Roger Byrd.

6.    On July 28, 2020, before the market opened, the Company announced that it was selected to receive a $765 million transformative loan from the U.S. International Development Finance Corporation ("DFC") under the Defense Production Act to produce pharmaceutical materials, including ingredients for COVID-19 drugs (the "$765 million DFC Loan" or "Loan"). The Company's announcement was part of a joint press release with the DFC, which stated in pertinent part that "Kodak is expanding its traditional product line to support the national response

to COVID-19 by bolstering domestic production and supply chains of key strategic resources" and "DFC's loan will accelerate Kodak's time to market by supporting startup costs needed to repurpose and expand the company's existing facilities in Rochester, New York and St. Paul, Minnesota, including by incorporating continuous manufacturing and advanced technology capabilities." These statements and others made by the Defendants represented to investors that the $765 million Loan from the government was a done deal.

7.      In reaction to the July 28, 2020 news that Kodak was forming a new business unit to produce essential pharmaceutical components funded by the $765 million DFC loan, Kodak's shares soared, reaching an intra-day high of $11.80 per share, 350% higher than the closing price the prior trading day, and closed at $7.94 per share on unusually heavy trading volume of over 284 million shares, about 203% higher than the closing price of $2.62 per share on July 27, 2020.

8.      Later, after the market closed, shares continued to rise in extended trading.

9.      Then, on July 29, 2020 before the market opened, Defendant Continenza was interviewed on CNBC's Squawk Box during which he touted the loan and the Company's shift to producing the ingredients for COVID-19 drugs. Among other things, Defendant Continenza stated that he was "very comfortable that we can bank on [the Loan]," that Kodak's new business unit based on the $765 million DFC Loan would be profitable, that the Loan had been a "tight-kept secret" up until July 28, 2020, and that he had no explanation for the surge in trading volume from about 74,000 on Friday, July 24, 2020 to more than 1.64 million on Monday, July 27, 2020.

10.      In reaction to Defendant Continenza's July 29, 2020 statements touting the Loan and the fact that investors can "bank on it," Kodak's shares skyrocketed further, reaching an intra-day high of $60 per share on July 29, 2020 on unusually heavy trading volume of over 276 million shares, and closed up $25.26 per share at $33.20 per share, 318% greater than the closing price of $7.94 per share on July 28, 2020.

11.    The extraordinary stock price increase over two days of more than 1000%, allowed Continenza and other Kodak insiders to enrich themselves.  Defendant Continenza's newly granted options alone increased from zero to more than $50 million over just a few days.

12.    However, after the market closed on July 29, 2020, the truth started to come to light through a series of partial revelations starting with the publication of an article by *The Wall Street Journal* reporting that Kodak had leaked news of the $765 million DFC Loan to certain media outlets on July 27, 2020, after which the Company sought to cover up its mistake by secretly attempting to retract those stories.  Following the after-market July 29 news, Kodak's stock price declined more than 10% during trading on July 30, 2020 and then declined by approximately 27% on July 31, 2020 to close at $21.85 per share.

13.    Following reports over the weekend of August 1-2, 2020, that Defendant Continenza had secretly been granted 1.75 million options on July 27, 2020, just prior to the announcement of the loan, Kodak's stock price fell 31.6% to close at $14.94 per share on August 3, 2020.

14.    On August 4, 2020, reports emerged that Senator Elizabeth Warren ("Senator Warren") had sent a letter dated August 3, 2020 requesting that U.S. regulators examine possible insider trading prior to Kodak's July 28, 2020 announcement of the $765 million DFC Loan. Senator Warren's letter to the Securities and Exchange Commission ("SEC") noted that on July 23, 2020, Defendant Continenza purchased 46,737 shares and board member Philippe Katz purchased 5,000 shares—stock trades that "raise questions about several different insider trading laws."  According to the letter, "[t]he purchase of stock by Mr. Continenza and Mr. Katz while the company was involved in secret negotiations with the government over a lucrative contract raises questions about whether these executives potentially made investment decisions based on material, non-public information derived from their positions," and potentially violates the Exchange Act.

4

Additionally, the letter pointed to the Company's initial July 27, 2020 announcement of the deal to some media outlets, followed by the subsequent frenzy in trading of its shares—a one-day volume of over 1.645 million shares, compared to average trading volume of 236,479 per day over the last year.

15.     On August 4, 2020, reports also circulated that the SEC was already investigating Kodak's loan disclosure and the corresponding stock surge.

16.     Additionally, on August 4, 2020, Kodak Board member George Karfunkel ("Karfunkel") and his wife disclosed in an SEC filing that they had made a July 29, 2020 donation of 3 million of their 6.3 million Kodak shares to a religious institution in Brooklyn, New York, that Karfunkel reportedly founded and controlled, a gift reportedly valued at $116.3 million using the average of the stock's high and low that day of $38.75 per share.  Notably, this "charitable" donation took place the day Kodak's stock peaked at $60 per share, and was provided to a congregation that reportedly has only been incorporated since 2018, used a Brooklyn accountant's office as its mailing address, had no website, and for which Karfunkel himself reportedly served as the President—one of only three officers of the purported charity.  *The Wall Street Journal* later reported that, while the organization described itself as an Orthodox Jewish synagogue, in fact it only appeared to have "a small space attached to a three-story apartment building on a quiet side street."  The article also reported that the donation represented the single largest gift recorded to a religious group, and would generate tens of millions of dollars in income-tax benefits for Karfunkel.  Karfunkel's gift is now the subject of an internal review by the Company's outside counsel.

17.     Following the August 4, 2020 news, Kodak's shares fell 3.6% to close at $14.40 per share.

18.     On August 5, 2020, several Congressional committees sent a joint letter to Defendant Continenza seeking documents about the Loan, insider trading, and stock options for their review of "DFC's decision to award this loan to Kodak despite your company's lack of pharmaceutical experience and the windfall gained by you and other company executives as a result of this loan" which raised "questions that must be thoroughly examined."

19.     On August 7, 2020, before the market opened, Kodak announced that its Board had opened an internal review of the disclosure of the $765 million DFC loan, after which Kodak's shares fell 7.6% to close at $14.88 per share on August 7, 2020.

20.     Also on August 7, 2020, after the market closed, the DFC issued a tweet indicating that the $765 million Loan to Kodak had been put on hold in light of the allegations of wrongdoing. On August 10, 2020, the first trading day following the news, Kodak's shares fell by $4.15 per share, nearly 28%, to close at $10.73 per share. Kodak's shares continued to decline the next trading day, falling by 6.7% to close at $10.01 per share on August 11, 2020.

21.     Then, on August 11, 2020, after the market closed, in connection with the Company's release of its financial results for the second quarter, Kodak held a conference call during which Defendant Continenza repeatedly referred to the Loan as a "potential loan", in stark contrast to his statements on July 29, 2020 that the Loan was effectively a done deal. Additionally, Defendant Continenza said that "we … support the DFC's decision to wait clarification before moving forward with the loan process." Following this news, Kodak's shares declined farther by an additional 2.9% to close at $9.72 per share on August 12, 2020.

22.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## II.    INTRODUCTION

23.    The claims asserted arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. Jurisdiction is conferred by Section 27 of the Exchange Act.

24.    Venue is proper in this Judicial District pursuant to Section 28 U.S.C. § 1391(b) and 27 of the Exchange Act.  Kodak's common stock trades on the New York Stock Exchange ("NYSE"), a national securities exchange, that is located in this District.

25.    In connection with the facts and omissions alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## III.    PARTIES

26.    Plaintiff purchased Kodak securities as detailed in the certification attached hereto and was damaged thereby.

27.    Defendant Kodak is incorporated in New Jersey, and the Company's principal executive offices are located at 343 State Street, Rochester, New York.  Kodak's common stock trades on the New York Stock Exchange under the symbol "KODK."

28.    Defendant Continenza served at all relevant times as the Company's Executive Chairman.

29.    Defendants Kodak and Continenza are collectively referred to as "Defendants".

## IV.    CLASS ACTION ALLEGATIONS

30.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of a class of all persons and entities who purchased or sold

the publicly traded securities of Kodak from July 27, 2020 through August 11, 2020, inclusive (the "Class Period"), and were damaged thereby.

31.    The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at the present time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members of the Class located throughout the United States.  As of March 2, 2020, Kodak had 43,578,870 shares of common stock outstanding.

32.    There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

(a)    whether Defendants violated the federal securities laws;

(b)    whether Defendants' statements omitted and/or misrepresented material facts;

(c)    whether the prices of Kodak securities were artificially inflated; and

(d)    the extent of damage sustained by Class members and the appropriate measure of damages.

33.    Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all members of the Class have sustained damages because of Defendants' unlawful activities alleged herein.  Plaintiff has retained counsel competent and experienced in class and securities litigation and intends to pursue this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiff.  Plaintiff has no interests which are contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

34.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

## V.    FALSE AND MISLEADING STATEMENTS

35.    On July 27, 2020, according to *The Wall Street Journal*, Kodak released information to local reporters in Rochester, New York with no embargo time on the news advisory. Further, according to *The Wall Street Journal,* the story was published at 12:12 p.m. eastern time and in the now removed story, a Kodak spokesperson was quoted as saying the initiative "could change the course of history for Rochester and the American people."

36.    On July 27, 2020, the price of Kodak's shares increased by $0.52 per share, nearly 25%, to close at $2.62 per share on unusually heavy trading volume of 1.645 million shares.

37.    On July 28, 2020, before the market opened, *Dow Jones* published an article reporting that Kodak had won a $765 million government loan under the Defense Production Act to help expedite domestic production of drugs, including hydroxy chloroquine that President Trump has touted for the treatment of coronavirus.  The *Dow Jones* article quoted Kodak's Executive Chairman, Defendant Continenza, as stating that Kodak will produce "starter materials" and "active pharmaceutical ingredients" used to produce generic medicines. Additionally, the article reported that "Mr. Continenza said he expects the loan to create around 300 jobs in Rochester, and 30 to 50 in Minnesota" further conveying to the market that the loan had been secured by the Company.

38.    Additionally, on July 28, 2020, Kodak and the DFC issued a joint statement before the market opened confirming the deal to lend Kodak $765 million, thereby transforming Kodak's business.

ROCHESTER, New York – At the direction of President Donald J. Trump, U.S. International Development Finance Corporation (DFC) Chief Executive Officer Adam Boehler will today sign a letter of interest (LOI) to provide a $765 million loan to Eastman Kodak Company (Kodak) to support the launch of Kodak Pharmaceuticals, a new arm of the company that will produce critical pharmaceutical components. The project would mark the first use of new authority delegated by President Trump's recent executive order that enables DFC and the U.S. Department of Defense (DOD) to collaborate in support of the domestic response to COVID-19 under the Defense Production Act (DPA).

> "Addressing the unprecedented challenges we face today—and preparing for future crises—requires innovative ideas and partnerships," said Boehler. "Today, we are bringing together the significant resources and expertise of the private sector and U.S. Government. We are pleased to support Kodak in this bold new venture. Our collaboration with this iconic American company will promote health and safety at home and around the world."

> "Kodak is proud to be a part of strengthening America's self-sufficiency in producing the key pharmaceutical ingredients we need to keep our citizens safe," said Kodak Executive Chairman Jim Continenza. "By leveraging our vast infrastructure, deep expertise in chemicals manufacturing, and heritage of innovation and quality, Kodak will play a critical role in the return of a reliable American pharmaceutical supply chain."

> "If we have learned anything from the global pandemic, it is that Americans are dangerously dependent on foreign supply chains for their essential medicines," said Assistant to the President and Director of the Office of Trade and Manufacturing Policy at the White House Dr. Peter Navarro. "This DFC-Kodak partnership is a big win for the use of President Trump's DPA powers, a big win for New York, and a huge step forward towards American pharmaceutical independence." "This is about assuring our supply chains now and in the future," said Rear Admiral John Polowczyk, White House Supply Chain Task Force Lead. "Kodak is stepping up to help onshore pharmaceutical production and this DPA action will allow the modernized Strategic National Stockpile to have domestic resiliency. Once Kodak ramps up we will have the ability to tap into that capacity for domestic use."

Boehler and Continenza will sign the LOI and be joined by Navarro, Polowczyk, and Deputy Secretary of Defense David Norquist. The signing ceremony will follow recorded remarks from President Trump and New York Governor Andrew Cuomo.

Since George Eastman put the first simple camera into the hands of consumers in 1888, Rochester, New York-based Kodak has become a globally recognized American brand that has helped lead the innovation of the graphic communications industry. Today, Kodak is expanding its traditional product line to support the

national response to COVID-19 by bolstering domestic production and supply chains of key strategic resources.

***Kodak Pharmaceuticals will produce critical pharmaceutical components that have been identified as essential but have lapsed into chronic national shortage, as defined by the Food and Drug Administration (FDA).*** Although Americans consume approximately 40 percent of the world's supply of bulk components used to produce generic pharmaceutics, only 10 percent of these materials are manufactured in the United States. [Emphasis added.]

DFC's loan will accelerate Kodak's time to market by supporting startup costs needed to repurpose and expand the company's existing facilities in Rochester, New York and St. Paul, Minnesota, including by incorporating continuous manufacturing and advanced technology capabilities. The LOI that will be signed today indicates Kodak's successful completion of DFC's initial screening and will be followed by standard due diligence conducted by the agency before financing is formally committed.

Once fully operational, Kodak Pharmaceuticals will have the capacity to produce up to 25 percent of active pharmaceutical ingredients used in non-biologic, non-antibacterial, generic pharmaceuticals while supporting 360 direct jobs and an additional 1,200 indirectly. The company plans to coordinate closely with the Administration and pharmaceutical manufacturers to identify and prioritize components that are most critical to the American people and U.S. national security.

39.     In reaction to the July 28, 2020 news, Kodak's shares soared, reaching an intra-day high of $11.80 per share, and closed at $7.94 per share, about 203% higher than the closing price of $2.62 per share on July 27, 2020.

40.     Then, on July 29, 2020 before the market opened, Defendant Continenza was interviewed by Joe Kernan on CNBC's Squawk Box touting the Loan and the Company's shift to producing the ingredients for COVID-19 drugs.  Excerpts from the interview follow.

Kernan:  . . . Is this a done deal?  There are some people are saying the government has gotta do some due diligence or this part of this agency of the government that is providing the loan.  Do you expect this, do you think we can bank on this James because we had quite a move in the stock yesterday?

Continenza:  ***Well, we feel very comfortable that we can bank on it.*** We're we have some work to do but we wouldn't have probably made the announcement, and everyone come up and do what we did yesterday. We had Dr. Navarro, we had you know Adam there who is the CEO of the DFC. We also had Rear Admiral

Polowczyk, *so we feel very comfortable we're gonna get to the end game*. We signed a letter of interest, but we've been working on this for a few months. *We feel very comfortable we're gonna get to the end game or we probably wouldn't be probably sitting here.* [Emphasis added.]

\* \* \*

Kernan:  We have seen a move in the stock and we just saw today that is just absolutely staggering. We are in this environment where things like this have happened with some other names. I do have a question of about whether you can lend any insight into this. I mean the volume is very average, was very average in Kodak on last Friday 74,000, last Thursday 80,000, last Wednesday 52,000. On Monday, 1.648 million shares.  And then Tuesday the news came out. *How do you account for that James? Any idea whether whether someone had wind of this?* I mean we didn't see a move in the stock until Tuesday but that is so far and away at the multiple of the daily average of volume over the last…over a long period of time. Any idea whether this got out?  [Emphasis added.]

Continenza:  *I I don't know. I mean obviously, this has been a pretty tight-kept secret obviously even in to the last day basically so uhm… I couldn't tell you what influenced that or didn't.*  [Emphasis added.]

Kernan:  I don't know if it was a well-kept, it doesn't look like it was a well-kept secret. (laughter from both parties) that, that

Continenza:
Well, we knew for over a week.

41.    In reaction to Defendant Continenza's July 29, 2020 statements touting the certainty of the Loan, Kodak's shares skyrocketed to an intra-day high of $60 per share and closed at $33.20 per share, $25.26 per share higher and more than 318% greater than the closing price of $7.94 per share on July 28, 2020.

42.    Defendants' statements in paragraphs 35-41 were materially false and/or misleading, and failed to disclose that (1) prior to the formal announcement of the Loan and during what should have been a black-out period for insider stock activity, Defendant Continenza was granted 1.75 million options and other insiders were engaging in suspiciously-timed transactions based on material non-public information, (2) the Defendants had improperly leaked the information to the market on July 27, 2020 before the official announcement and actively engaged

in a cover-up scheme, 3) the status and likelihood of the $765 million DFC Loan was misrepresented to the market for many reasons, particularly given the Company's wrongful behavior in terms of secretly granting options to Defendant Continenza and other insider transactions while in possession of material non-public information, as well as improperly leaking the news and engaging in a cover up scheme of these facts, and (4) as a result of the foregoing, Defendants' statements about Kodak's business, operations, and prospects, were materially false and/or misleading and/or lacked a reasonable basis.

## VI.    THE TRUTH BEGINS TO EMERGE

43.    On July 29, 2020 after the market closed the first news suggesting wrongdoing by Kodak in connection with its disclosure of the government loan began to emerge when *The Wall Street Journal* published an article entitled "Tweets and Articles Sent Kodak Shares Surging Before Official Announcement."  The article stated that "Kodak sent a news advisory to media outlets without indicating the information wasn't intended to be released publicly," reporting that Kodak had shared information about an agreement between the company and the Trump administration with media outlets before the announcement on July 28, 2020. Some media companies reportedly published that information before deleting it following a request from the company.  Specifically, *The Wall Street Journal* article stated in pertinent part as follows:

> "[L]ess than a day before the announcement, the stock was already moving higher on heavy volume. More than 1.6 million shares of Kodak were traded on Monday, a big jump from an average daily volume of 231,000 shares a day during the previous 30 trading days. The stock price gained 25% that day.
>
> The early activity was suspicious to some traders. It came well ahead of the announcement the next day. But some market observers know why the Kodak stock moved early: tweets and news stories from television stations in Kodak's hometown of Rochester, N.Y. Some of those tweets and stories were quickly deleted.
>
> Just after noon on Monday, two news reporters in Rochester tweeted information about a Kodak initiative with the government in response to the coronavirus

pandemic. One reporter has since deleted the tweet, the other has kept it up. The tweet that remains up has a time stamp of 12:05 p.m. ET.

At about the same time, news stories were posted on the websites of the ABC and CBS affiliates in Rochester. The news stories were initially published on Monday after Kodak sent an advisory to media outlets about the initiative, according to Chuck Samuels, general manager of the ABC affiliate. The advisory didn't indicate that the information wasn't supposed to be released publicly, he said.

A copy of it reviewed by The Wall Street Journal confirmed there was no embargo time on the news advisory.

The CBS affiliate's story was published at 12:12 p.m. ET. In the now removed story, a Kodak spokesperson was quoted as saying the initiative "could change the course of history for Rochester and the American people," according to a copy of the article reviewed by The Wall Street Journal that was collected by Meltwater, a global media intelligence company.

Both stories were then removed from their respective websites after Kodak told the stations that the information was for "background only" and not for publication.

A representative for the CBS affiliate declined to comment.

A Kodak spokesman said the company sent the advisory to journalists in Rochester on Monday morning. The spokesman confirmed the company asked the reporters to remove the information after they posted it.

Following the tweets and news stories, activity in Kodak's stock spiked, trading data shows. In the hour from 12:30 to 1:30 p.m. ET on Monday, Kodak trading volume surged, and the price of its shares rose from $2.22 to $2.41, a jump of more than 8%.

Trading in Kodak options also surged on Monday, rising to about 20 times normal levels, with a noticeable spike just before 1 p.m. ET, according to Henry Schwartz, founder of data provider Trade Alert. There was more than three times as much volume in Kodak call options, which can be used to place bullish bets on the company's stock, than in bearish put options, he added.

44.     On July 30, 2020, the first trading day following this news, Kodak's shares fell by

$3.37 per share, more than 10%, to close at $29.83 per share.  Shares declined an additional $7.98

per share, nearly 27%, the next trading day to close at $21.85 per share on July 31, 2020.

45.     Then, over the weekend of August 1-2, 2020, *Reuters* and other news sources

reported that Defendant Continenza was granted options for 1.75 million shares on July 27, 2020

based on an informal and non-binding "understanding" with the Company's board.  These facts continued to be widely circulated on Monday August 3, 2020.

46.     On the first trading day following this news, Kodak's shares fell $6.91 per share, or 31.6%, to close at $14.94 per share on August 3, 2020.

47.     Then, on the morning of August 4, 2020, multiple news sources reported that Senator Warren had asked U.S. regulators to examine possible insider trading prior to Kodak's July 28, 2020 announcement of the $765 million DFC Loan, as well as potential disclosure violations involving Kodak after the Company's shares soared when it announced a surprise foray into generic drugs with help from the $765 million DFC Loan.  At the same time, news circulated on the morning of August 4, that Kodak's disclosure of the Loan and the stock surge were already under examination by the SEC.

48.     Later that day, *The Wall Street Journal* published an article confirming the rumors of the SEC probe and also again reported that news about the Loan had been leaked on July 27, contrary to Defendant Continenza's assertions on July 29, 2020 that it had been kept a "tight-kept secret."  Among other things, *The Wall Street Journal* article stated as follows:

> The Securities and Exchange Commission is investigating the circumstances around Eastman Kodak Co. 's announcement of a $765 million government loan to make drugs at its U.S. factories, according to people familiar with the matter.
>
> News of the loan last week caused Kodak's shares to rise as high as $60, before falling to about $15 on Monday due to a dilution in the shares. Amid the heightened volatility, trading volume has surged. The price spike briefly produced a potential windfall for company executives who owned stock-option grants, some of which were granted on July 27, the day before the loan was officially announced.
>
> The SEC's investigation is at an early stage and might not produce allegations of wrongdoing by the company or any individuals, the people familiar with the matter said. Among the areas being probed by regulators: how Kodak controlled disclosure of the loan, word of which began to emerge on July 27, causing Kodak's stock price to rise 25% that day.

> The Wall Street Journal reported last week that Kodak had shared information about an agreement between the company and the Trump administration with media outlets before the public announcement. Some media companies then published that information before deleting it following a request from the company.

49.    Following this news, Kodak's shares fell $0.54 per share, about 3.6%, to close at $14.40 per share on August 4, 2020.

50.    On the morning of August 7, 2020, the Company issued a press release and filed a Form 8-K with the SEC announcing that the Kodak Board had opened an internal review of the disclosure of the $765 million DFC Loan.  In pertinent part, the Company's press release stated as follows:

> Rochester, N.Y., August 7, 2020 – Eastman Kodak Company (NYSE: KODK, the "Company" or "Kodak") today announced the appointment of a special committee of independent directors of the Board (the "Committee"). The Committee, comprised of directors Jason New and William G. Parrett, will oversee an internal review of recent activity by the Company and related parties in connection with the announcement of a potential loan by the U.S. International Development Finance Corporation to support the launch of Kodak Pharmaceuticals.
>
> The internal review will be conducted for the Committee by Akin Gump Strauss Hauer & Feld LLP. The Company does not intend to make further public comment on the Committee's work during the pendency of the review.

51.    Following this news, Kodak's shares fell $1.23 per share, about 7.6%, to close at $14.88 per share on August 7, 2020.

52.    Also on August 7, 2020, after the market closed, the DFC issued the following tweet indicating that the Kodak loan had been put on hold in light of the allegations of wrongdoing:

> "On July 28 we signed a Letter of Interest with Eastman Kodak.  Recent allegations of wrongdoing raise serious concerns.  We will not proceed any further unless these allegations are cleared."

53.    Reports that the DFC had put the Kodak loan on hold pending the outcome of various investigations into potential wrongdoing by Kodak and its executives became widely circulated over the weekend of August 8-9, 2020.

54.     On August 10, 2020, the first trading day following the news, Kodak's shares fell by $4.15 per share, nearly 28%, to close at $10.73 per share.

55.     Then on August 11, 2020, an article published by *Dow Jones* informed investors that according to a filing with the SEC during the prior week, one of Kodak's Board members, George Karfunkel, had made a suspiciously-timed gift of 3 million shares to a congregation in Brooklyn, New York on July 29, 2020.  According to the article, the gift was valued at over $116 million abased on IRS rules, making it the single largest donation to a religious group.

56.     On August 11, 2020, Kodak's shares continued to fall, declining by $0.72 per share, about 6.7%, to close at $10.01 per share on August 11, 2020.

57.     On August 11, 2020, after the market closed, in connection with the Company's release of its financial results for the second quarter, Kodak held a conference call during which Defendant Continenza repeatedly referred to the loan as a "potential loan", in stark contrast to his statements on July 29, 2020 that "[w]e feel very comfortable that we can bank on it."  Additionally, Defendant Continenza said that "we … support the DFC's decision to wait clarification before moving forward with the loan process."

58.     Following this news, Kodak's shares declined farther by $0.29 per share, or 2.9%, to close at $9.72 per share on August 12, 2020.

## VII.    ADDITIONAL SCIENTER ALLEGATIONS

59.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Continenza by virtue of his receipt

of information reflecting the true facts regarding Kodak, his control over, and/or receipt and/or modification of Kodak's allegedly materially misleading misstatements and/or his associations with the Company which made him privy to confidential proprietary information concerning Kodak, participated in the fraudulent scheme alleged herein.

60.     Defendants knew or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public.  The ongoing fraudulent scheme described in this complaint could not have been perpetrated without the knowledge and complicity of the personnel at the highest level of the Company, particularly Defendant Continenza.

61.     Defendants had the motive and opportunity to perpetrate the fraudulent scheme and course of business described herein because Continenza was the most senior officer of Kodak, issued statements and press releases on behalf of Kodak and had the opportunity to commit the fraud alleged herein.

62.     Defendants were motivated to conceal the fraud alleged herein in order to inflate the price of Kodak's shares, which harmed purchasers and others that transacted in Kodak's shares at inflated prices following the Defendants' issuance of false and misleading statements.  As the truth was revealed, the artificial inflation in the share price was removed.

## VIII.   LOSS CAUSATION/ECONOMIC LOSS

63.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Kodak securities and operated as a fraud or deceit on Class Period purchasers of Kodak securities by misrepresenting the certainty and funding of the $765 million DFC loan.  Defendants achieved this by making positive statements about the Loan status, likelihood of closing the Loan and other

aspects of the transaction, or disregarded with deliberate recklessness, the adverse facts alleged above.

64.    Later, however, when Defendants' prior misrepresentations were disclosed and became apparent to the market, the price of Kodak's securities fell precipitously as the prior artificial inflation came out of Kodak's share price.

65.    As a result of their transactions in Kodak securities during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages under the federal securities laws.

66.    As a direct result of the public revelations regarding the truth about the condition of Kodak's business and the negative adverse factors that had been impacting Kodak's business during the Class Period, the price of Kodak's securities materially declined.  This drop removed the inflation from Kodak's share price, causing real economic loss to investors who transacted in Kodak securities during the Class Period.

67.    The decline in the price of Kodak securities was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market.  The timing and magnitude of the artificial inflation and the subsequent decline in the price of Kodak securities negates any inference that the loss suffered by Plaintiff and other Class members was caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to the Defendants' fraudulent conduct.

## IX.    FRAUD-ON-THE-MARKET DOCTRINE

68.    At all relevant times, the market for Kodak's securities was an efficient market for the following reasons, among others:

(a)    The Company's common stock met the requirements for public listing and was listed and actively traded on the NYSE, a highly efficient market;

(b)     As a regulated issuer, the Company filed periodic public reports with the SEC; and

(c)     The Company regularly issued press releases which were carried by national news wires.  Each of these releases was publicly available and entered the public marketplace.

69.     As a result, the market for the Company's publicly traded securities promptly digested current information with respect to Kodak from all publicly available sources and reflected such information in the price of the Company's securities.  Under these circumstances, all purchasers of the Company's publicly traded securities during the Class Period suffered similar injury through their purchase of the publicly traded securities of Kodak at artificially inflated prices and a presumption of reliance applies.

## X.     NO SAFE HARBOR

70.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by Continenza who knew that those statements were false when made.

## XI.    CLAIMS FOR RELIEF

### Count I

**For Violation of Section 10(b) of the Exchange Act**
**And Rule 10b-5 Against All Defendants**

71.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

72.    During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were materially false and misleading in that they contained material misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

73.    Defendants violated Section 10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)    Employed devices, schemes and artifices to defraud;

(b)    Made untrue statements of material facts or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made not misleading; or

(c)    Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Kodak's publicly traded securities during the Class Period.

74.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Kodak's publicly traded securities.  Plaintiff and the Class would not have transacted in Kodak's securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated and manipulated by Defendants' misleading statements.

21

75.     As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases and/or sales of Kodak's securities during the Class Period.

## COUNT II

**For Violation of Section 20(a) of the Exchange Act
Against Continenza**

76.     Plaintiff repeats and re-alleges each and every allegation contained above as if full set forth herein.

77.     Continenza acted as a controlling person of Kodak within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of his high-level position, and his ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the statements filed by the Company with the SEC or disseminated to the investing public, Continenza had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff alleges are false and misleading.  Continenza was provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

78.     In particular, Continenza had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the representations giving rise to the securities violations as alleged herein, and exercised the same.

79.     As set forth above, Kodak and Continenza each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of his position as a controlling person, Continenza is liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Kodak's and Continenza's wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases and/or sales of the Company's securities during the Class Period.

## XII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.     Declaring this action to be a proper class action pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein;

B.     Awarding damages, including interest; awarding reasonable costs, including attorneys' fees; and

C.     Awarding such equitable/injunctive relief as the Court may deem proper.

## XIII.   JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 26, 2020            KAPLAN FOX & KILSHEIMER LLP

                                 By:    /s/ Frederic S. Fox
                                        Frederic S. Fox

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox
Donald R. Hall
Jeffrey P. Campisi
Pamela Mayer
850 Third Avenue, 14th Floor
New York, NY 10022
Tel: (212) 687-1980
Fax: (212) 687-7714
ffox@kaplanfox.com
dhall@kaplanfox.com
jcampisi@kaplanfox.com
pmayer@kaplanfox.com

Counsel for Plaintiffs Jimmie McAdams and Judy
McAdams

## CERTIFICATION

We, Jimmie A. McAdams and Judy P. McAdams, hereby certify and swear as follows:

1. We have reviewed a complaint against Eastman Kodak Company alleging violations of the securities laws and authorize the filing of a complaint;

2. We are willing to serve as representative parties on behalf of a class, or to be a members of a group representing a class, including providing testimony at deposition and trial, if necessary;

3. Neither of us has within the 3-year period preceding the date hereof sought to serve, or served, as a representative party on behalf of a class in an action brought under the federal securities laws;

4. Our transactions in Eastman Kodak Company securities during the proposed class period are set forth in attached Schedule A.

5. We did not purchase Eastman Kodak Company securities at the direction of our counsel or in order to participate in any private action under the federal securities laws; and

6. We will not accept any payment for serving as a representative party on behalf of a class beyond my pro rata share of any recovery, except as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Date: August 24, 2020

_____
JIMMIE A. MCADAMS

_____
JUDY P. MCADAMS

## Schedule A

### Transactions in Eastman Kodak Co.

| Security Description | Transaction | Trade Date | Quantity | Price |
|---|---|---|---|---|
| KODK | Buy | 7/29/2020 | 41 | $37.98 |
| KODK | Buy | 7/29/2020 | 59 | $37.92 |
| KODK | Buy | 7/29/2020 | 100 | $39.31 |
| KODK | Buy | 7/29/2020 | 100 | $46.00 |
| KODK | Sell | 8/3/2020 | (300) | $18.00 |